<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KNIGHTS FRANCHISE SYSTEMS, INC.,** *Plaintiff*, v. **LAXMI KRUPA, INC. et al.,** *Defendants.* | Civil Action No. 15-8820 **OPINION** |

**THIS MATTER** comes before the Court on Plaintiff Knights Franchise Systems' ("Plaintiff" or "KFS") motion for default judgment against Defendants Laxmi Krupa, Inc. ("Laxmi Krupa") and Bhanuprasod Mehta ("Mehta") (together, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 13. For the reasons set forth herein, the motion is **GRANTED**.

**I.   BACKGROUND**

Plaintiff KFS is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Verified Compl. ¶ 1. KFS is a franchisor of guest lodging facilities. Id. ¶ 10. Defendant Laxmi Krupa, Inc. is a corporation organized and existing under the laws of Georgia, where its principal place of business is located. Id. ¶ 2. Defendant Bhanuprasod Mehta is the only member of KFS and is a citizen of the State of Georgia. Id. ¶¶ 3-4.

On July 3, 1996, KFS entered into the Franchise Agreement with Laxmi Krupa for the operation of a 48-room Knights guest lodging facility located at 601 West Central Avenue, Lenox, Georgia (the "Facility"). Id. ¶ 19. Laxmi Krupa was obligated to operate the Facility for a fifteen-year term. Id. ¶ 20. In addition, Laxmi Krupa also agreed to make certain periodic payments to

1

KFS for royalties, taxes, interest, system assessment fees, and other fees (collectively, "Recurring Fees"), to accurately report to KFS its monthly gross revenue for the purpose of determining the amount of royalties and other Recurring Fees due to KFS, and to pass quality assurance inspections by KFS.  Id. ¶¶ 21-22, 24-25.  For all past due amounts payable to KFS, Laxmi Krupa agreed to pay interest at the rate of 1.5% per month.  Id. ¶ 23.

Section 11 of the Franchise Agreement permitted KFS to terminate the Franchise Agreement after notice to Laxmi Krupa for, among other things, failing to pay any amount due to KFS under the Agreement and/or failure to operate the Facility as a "Knights Inn."  Affidavit of Suzanne Fenimore ("Fenimore Aff.") Ex. A ¶ 17.4, Dkt. No. 13-3.  Section 13 of the Agreement specified Laxmi Krupa's obligations in the event of a termination of the Agreement, including its obligation to immediately cease using all of Plaintiff's marks.  Verified Compl. ¶ 26.  Pursuant to Section 17.4 of the Franchise Agreement, Laxmi Krupa agreed that in the event of litigation, the non-prevailing party would pay all legal costs and expenses, including reasonable attorneys' fees.  Id. ¶ 27.

Effective as of the date of the Franchise Agreement, Mehta and Ramesh Sheth[1] provided KFS with a Guaranty of Laxmi Krupa's obligations under the Franchise Agreement.  Id. ¶ 28; Fenimore Aff. Ex. C.  Pursuant to the Guaranty, Mehta agreed, *inter alia*, that upon a default under the Franchise Agreement, he would "immediately make each payment and perform or cause [Laxmi Krupa] to perform, each unpaid or unperformed obligation of [Laxmi Krupa] under the [Franchise] Agreement."  Verified Compl. ¶ 29; Fenimore Aff. Ex. C.  In addition, Mehta agreed to pay the costs, including reasonable attorneys' fees, incurred by KFS in enforcing its rights or

---

[1] By Amendment dated October 21, 2003, the parties amended the Guaranty to reflect Mehta as the sole guarantor of Laxmi Krupa's obligations under the Franchise Agreement.  Verified Compl. at 7 n.2.

remedies under the Guaranty or Franchise Agreement.  Verified Compl. ¶ 30; Fenimore Aff. Ex. C.

Under its terms, the Franchise Agreement would expire on the day prior to the fifteenth anniversary of the Opening Date.  Fenimore Aff. Ex. A ¶ 5.  As the Franchise Agreement was entered into on July 3, 1998, the term expired on July 2, 2013.  Id. ¶ 14.  Around that time, KFS advised Laxmi Krupa that it was required to pay KFS all outstanding Recurring Fees through the date of expiration.  Verified Compl. ¶ 31.  By letter dated July 12, 2013, KFS reiterated the expiration of the Franchise Agreement, and advised Laxmi Krupa that it was to immediately discontinue the use of all items bearing Plaintiff's marks, de-identify the Facility within ten days after the date of the letter, and remit payment for all outstanding Recurring Fees through the date of expiration.  Id. ¶ 32.  Nevertheless, following the expiration of the Franchise Agreement, Laxmi Krupa used Plaintiff's marks without authorization to rent rooms by failing to remove Knights signage and continuing to identify the Facility as a Knights guest lodging facility.  Id. ¶ 33-36.  Laxmi Krupa did not remove Plaintiff's marks from the Facility until December 23, 2014.  Id. ¶ 37.

On December 23, 2015, Plaintiff filed the instant Verified Complaint.  Dkt. No. 1.  The Verified Complaint contains five counts against Defendants: (1) a claim for violation of the Lanham Act for continued unauthorized use of Plaintiff's marks; (2) an accounting claim for failure to permit KFS to examine Laxmi Krupa's financial materials; (3) a claim under the Franchise Agreement for failure to remit Recurring Fees to KFS; (4) an unjust enrichment claim for failure to remit Recurring Fees to KFS; and (5) a claim against Mehta under the Guaranty for Laxmi Krupa's failure to remit Recurring Fees to KFS.  Verified Compl. ¶¶ 38-63.  Plaintiff seeks Recurring Fees in the amount of $107,413.17 as of March 16, 2016, inclusive of interest at the rate

of 1.5% per month.  Fenimore Aff. ¶¶ 16-17.

On January 11, 2016, service of the Verified Complaint was made on the Defendants.  Dkt. No. 6.  On March 24, 2016, Plaintiff requested the entry of default, and the Clerk entered default on March 29, 2016.  Dkt. No. 8.  In March and April, Plaintiff requested and the Court granted extensions of time to file for default judgment, in order for the parties to pursue settlement discussions.  Dkt. Nos. 9-12.  On May 6, 2016, Plaintiff filed the instant motion for default judgment against Laxmi Krupa and Mehta.  Dkt. No. 13.  The motion is unopposed.

## II.   LEGAL STANDARD

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008).  Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages.  See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011).  Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

In addition, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default.  Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

4

### III. ANALYSIS

#### A. Jurisdiction & Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendants. This Court has subject matter jurisdiction by virtue of diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and there is an amount in controversy exceeding $75,000. See Verified Compl. ¶¶ 1-5. This Court has personal jurisdiction over Laxmi Krupa based upon consent to jurisdiction in this district in Section 17.4 of the Franchise Agreement, which states that the company consented to and waived objection to "the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey for all cases and controversies between [Laxmi Krupa] and [KFS] or under this Agreement." Verified Compl. ¶ 7; Fenimore Aff. Ex. A ¶ 17.4. The Court has personal jurisdiction over Mehta pursuant to the terms of the Guaranty, which provided that he was personally bound by Section 17.4 of the Franchise Agreement. Verified Compl. ¶ 8; Fenimore Aff. Ex. C. Plaintiff also provided the Court with proof of personal service on Laxmi Krupa and Mehta. See Executed Summonses, Dkt. No. 6.

#### B. Liability

As Defendants have not filed an Answer or otherwise responded to the Verified Complaint, the Court must accept the truthfulness of KFS's well pled allegations as to liability. The Court is satisfied that Plaintiff has adequately pled claims against Defendants for breach of contract and violation of the Lanham Act.

To state a claim for breach of contract in New Jersey, a plaintiff must allege: (1) the existence of a valid contract between the parties; (2) that Defendant breached the contract; and (3) that Plaintiff suffered damages due to the breach. See AT & T Credit Corp. v. Zurich Data Corp., 37 F. Supp. 2d 367, 370 (D.N.J. 1999). Plaintiff has alleged that: (1) there was a contractual

relationship with Laxmi Krupa based on the Franchise Agreement, see Verified Compl. ¶¶ 19, 28; Fenimore Aff. ¶¶ 3, 11; (2) that Laxmi Krupa breached the Agreement by failing to make required payments of Recurring Fees and continuing to use Plaintiff's marks following the termination of the Agreement, see Verified Compl. ¶¶ 31-37; and (3) that Plaintiff suffered damages as a result of Laxmi Krupa's breach, see Verified Compl. ¶¶ 44, 53; Fenimore Aff. ¶¶ 14-17.  Therefore, Plaintiff has sufficiently alleged that Laxmi Krupa is liable for breach of the Franchise Agreement.

In addition, Plaintiff adequately pled the personal liability of Mehta for Laxmi Krupa's breach of the Franchise Agreement.  The Guaranty provides that, among other things:

> Upon default by Franchisee and notice from you we will immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement.  Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Franchisee, or settle, adjust or compromise any claims against Franchisee. We waive notice of amendment of the Agreement.  We acknowledge that Section 17 of the Agreement, including Sections 17.4 (Remedies, Choice of Venue and Consent to Jurisdiction) and 17.6 (Waiver of Jury Trial), applies to this Guaranty.

Fenimore Aff. Ex. C.   Under New Jersey law, "'[g]uaranty agreements are to be strictly construed.'"  Mapssy Int'l, Inc. v. Hudson Valley Trading Inc., No. 08-3037, 2012 WL 4889229, at *4 (D.N.J. Oct. 11, 2012) (quoting Housatonic Bank and Trust Co. v. Fleming, 234 N.J. Super. 79, 560 A.2d 97 (App. Div. 1989)).  Mehta's agreement that "[u]pon default by Franchisee" he would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement" is unambiguous and fully enforceable.  Therefore, Mehta is personally liable for any damages, attorneys' fees, and costs incurred by Plaintiff for Laxmi Krupa's breach of the Franchise Agreement.

Plaintiff also brings claims under Sections §§ 32, 43(a), and 43(c) of the Lanham Act (codified at 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(c)).  Verified Compl. ¶¶ 39-46.  When the

6

plaintiff argues "that the defendant's use of a protected mark is causing confusion as to the affiliation of goods or services," the elements for the claims are the same. Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *4 (D.N.J. Mar. 19, 2012) (quotation omitted). "To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin or the goods or services." Id. (quotation omitted). Plaintiff has adequately pled that the mark is valid and legally protectable and that it owns the mark. Verified Compl. ¶¶ 10-18. Plaintiff has also pled facts that show that Laxmi Krupa's unauthorized use of the mark is likely to cause consumer confusion, see id. ¶¶ 33-37, 40, 42, as Laxmi Krupa continued to use Plaintiff's marks after the termination of the Franchise Agreement. See Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990) (holding that "there is a great likelihood of confusion when an infringer uses the exact trademark") (quotation omitted). Therefore, Plaintiff has sufficiently alleged that Laxmi Krupa is liable for violation of the Lanham Act.[2]

### C. Appropriateness of Default Judgment

Next, the Court must consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. The Court concludes that in the absence of any responsive pleading and based upon the facts alleged in the Verified Complaint, Defendants do not have a meritorious defense. See Ramada, 2012 WL 924385, at *5. Second, the Court finds that Plaintiff will suffer prejudice absent entry of default judgment as it would have

---

[2] As the Court holds that Plaintiff has established a valid cause of action and is entitled to the extent of its requested damages under its breach of contract and Lanham Act claims, the Court need not assess Plaintiff's alternative theories of liability in Counts II and IV.

7

no other means of obtaining relief. Finally, the Court finds that Defendants acted culpably as they have been served with the Complaint, are not infants or otherwise incompetent, and are not presently engaged in military service. See Couch Cert. ¶¶ 4-11; Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

### D. Monetary Damages

Plaintiff has requested a default judgment in the amount of $107,413.17. Fenimore Aff. ¶¶ 16-17. This amount is calculated as of March 16, 2016,[3] and consists of Recurring Fees that Plaintiff was entitled to under Sections 7 and 18.4 and Schedule C of the Franchise Agreement, as well as interest in the amount of 1.5% per month pursuant to Section 7.3 of the Franchise Agreement. See id. ¶ 6, 7, 16. In support of its claim for damages, Plaintiff submitted an itemized statement setting forth the amounts of Recurring Fees due and owing from Defendants. See Fenimore Aff. Ex. F. This evidence satisfies the legal standard for damages. See, e.g., Knight[s] Franchise Sys. v. Paradise Motel, Inc., No. 14-4579, 2015 WL 3755069, at *2 (D.N.J. June 16, 2015) (holding that similar evidence of damages was sufficient for the entry of default judgment); Knights Franchise Sys., Inc. v. Gauri Shivam LLC, No. 10-5895, 2011 WL 2909321, at *3 (D.N.J. July 18, 2011) (same).[4]

---

[3] In the Affidavit of Suzanne Fenimore, Plaintiff states that the $107,413.17 is the amount due, inclusive of interest, as of both March 16, 2016 and of June 6, 2016. See Fenimore Aff. ¶¶ 16-17. Based on the time stamp of the itemized statement of Recurring Fees and interest, it appears that the total is as of March 16, 2016. See id. Ex. F at 1. Because Plaintiff only provides proof of the amount due as of March 16, 2016, the Court will not award damages based on the June 6, 2016 date.

[4] The Court notes that Plaintiff does not appear to seek damages for any Lanham Act violations, and has not requested attorneys' fees or costs.

IV.    CONCLUSION

For the reasons set forth herein, Plaintiff's motion for default judgment, Dkt. No. 13, is **GRANTED** and judgment shall be entered against Defendants in the amount of $107,413.17. An appropriate Order accompanies this Opinion.

**Dated: December 22, 2016**

                                              */s Madeline Cox Arleo*
                                              **Hon. Madeline Cox Arleo**
                                              **United States District Judge**